# EXHIBIT A



## TOTAL HIGHER EDUCATION

www.theloanprogram.org

### Total Higher Education (T.H.E.) Loan Program Announcement · February 18th, 2008

We at NorthStar Education Finance, Inc. regret to report that, due to the ongoing disruption in the global markets, the T.H.E. Bonus will be temporarily suspended, through the Total Higher Education (T.H.E.) Loan Program. As we have stated on our web site, T.H.E. Bonus amount is based on current financial market conditions and portfolio performance and is therefore subject to change.

This temporary action is a result of the ongoing disruption in the global credit markets. NorthStar's President, Paige Thornton, said, "We are disappointed that the mortgage debt market crisis has spilled over into the student loan debt markets and are now affecting the cost and availability of funds for education loans." The costs of some of our debt instruments have absolutely skyrocketed and unfortunately, there is not a viable financing alternative at this time.

We are in a comparatively strong position with the T.H.E. Loan Program, as there have been no credit issues with our high quality education loans, to date. Nonetheless, to protect the integrity of our debt instruments, we are forced to discontinue the bonus until the markets recover or alternative financing structures are in place. The situation in the securities market is so severe that Congress and the US Treasury have begun to explore solutions. It is still our strong hope that a solution will be found and we can resume the T.H.E. bonus program.

This change will in no way affect NorthStar's tradition of delivering superior service to its students and schools. Now more than ever, it is vital for an education lender to provide guidance and counseling to student borrowers. The T.H.E. Loan Program has always put students first, by being the first to offer zero-fee loans, in-school consolidation, the highest qualification rate for repayment benefits, and first-of-its-kind debt counseling services.

NorthStar created the T.H.E. Loan Program in 1997 to provide students a low cost option to financing their education by using the excess margin generally earned on education loans to buy down origination fees and to return that margin to student borrowers during the repayment phase of the loan. We've met that commitment for the past 10 years:

| Fiscal Year* | Origination Fee Buy Downs | Repayment Bonus | Qualification Rates | Total Student Cash Benefit(s) |
|---|---|---|---|---|
| 1999 | $121,613 | 0[1] | | $121,613 |
| 2000 | $5,179,059 | 0[1] | | $5,179,059 |
| 2001 | $9,694,845 | $516,605 | over 95% | $10,211,240 |
| 2002 | $12,631,003 | $1,355,478 | over 95% | $13,986,481 |
| 2003 | $16,048,231 | $2,602,203 | over 95% | $18,650,433 |
| 2004 | $19,847,376 | $4,391,012 | over 95% | $24,238,388 |
| 2005 | $22,087,558 | $7,325,998 | over 95% | $29,380,557 |
| 2006 | $20,200,955 | $10,532,386 | over 95% | $30,633,341 |
| 2007 | $20,931,990 | $12,824,000 | over 95% | $33,755,990 |
| Oct 07 - Jan 08 | $8,492,340 | $5,102,075 | over 95% | $13,594,415 |
| | | | | |
| Total Origination Buy-downs and Repayment Bonus | | | | $179,867,635 |

(1)  New loan program -- no loans in repayment

*  October through September

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE NORTHSTAR EDUCATION
FINANCE, INC. CONTRACT
LITIGATION

*This document relates to:*

ALL ACTIONS

Case No: 01990-MD-08

Judge Donovan W. Frank

Magistrate Judge Jeffrey J. Keyes

**STIPULATION OF CLASS
ACTION SETTLEMENT**

This Stipulation of Class Action Settlement (the "Stipulation" or "Agreement") is made as of December 14, 2009, by and among (a) the Named Plaintiffs in this MDL Action on behalf of the Settlement Class and (b) Defendant Northstar Education Finance, Inc. ("Northstar") (collectively Plaintiffs and Northstar are referred to as the "Parties" or "Settling Parties"). This Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, and release all liability associated with the Settled Claims, subject to the terms and conditions set forth in this Stipulation and subject to the approval of the Court.

## I.   BACKGROUND

This Action is comprised of four putative nationwide class actions filed by the Named Plaintiffs in late 2008 and early 2009 against Northstar, seeking damages and injunctive relief on behalf of Northstar's student loan borrowers following Northstar's Suspension of the T.H.E. Repayment Bonus ("Bonus") in February 2008. The initial

transfer order creating this MDL Action was entered by the Judicial Panel on Multidistrict Litigation on December 3, 2008.

Shortly thereafter, counsel for the Named Plaintiffs, led by Class Counsel (defined below), and counsel for Northstar, began what would become extensive, arm's-length, settlement negotiations, lasting over six months. These settlement negotiations involved numerous in-person and telephonic settlement conferences, Northstar's production of thousands of pages of documents, numerous settlement conferences and mediation sessions before The Honorable Magistrate Judge Jeffrey J. Keyes, and numerous exchanges of term sheets, correspondence, and other information in furtherance of proposed settlement ("Settlement"). These extensive negotiations culminated in this proposed Settlement and Stipulation.

With respect to the Settlement negotiations, the Settling Parties have continued to vigorously disagree on the merits of the litigation. Specifically, while the Named Plaintiffs, through Class Counsel, contend that the Bonus was a provision of the student loan contracts whose Suspension constitutes a breach of contract, a violation of consumer protection statutes, and was otherwise unlawful and could be rectified by law or equity, Northstar contends that the Bonus was never a provision of the student loan contracts and, in any event, Northstar's Suspension of the bonus (which was caused by the national financial crisis) did not breach any contractual provisions, violate any consumer protection statutes, or otherwise constitute unlawful or wrongful conduct. By entering into this Stipulation Northstar neither acknowledges nor admits that any of the Named

Plaintiffs' legal claims have merit. Similarly, the Named Plaintiffs do not acknowledge that any of Northstar's denials and affirmative defenses have merit.

Notwithstanding their differing views on the merits, the Settling Parties nonetheless have agreed that a fair, reasonable, and adequate settlement was possible if it: (a) compensated Class Members for missed Bonus payments caused by Northstar's February 2008 suspension of the Bonus program; (b) provided Northstar's student loan borrowers with Bonus funds on a going-forward basis at funding levels consistent with Northstar's past policy (subject to the terms and conditions set forth herein); and (c) devised a protocol to compensate Class Members whose loans were sold off by Northstar during the pendency of this Action, as well as those Class Members whose loans Northstar may sell off in the future, for the purposes more fully explained below.

In entering into this Stipulation, with the aid and assistance of Magistrate Judge Keyes, the Settling Parties believe that they have reached a fair, reasonable, and adequate settlement that accomplishes the goal of reinstating the Bonus in modified and certain form that attempts to appropriately account for Northstar's current and projected future financial condition(s) and operations, that, in the event Northstar's financial performance improves, may allow for the Bonus to be paid in full on a going-forward basis. Moreover, the Settling Parties believe that settling the Action on the terms set forth below will benefit all parties more so than if the Action proceeded on a vigorously-contested, expensive, lengthy, and uncertain litigation track.

## II.   TERMS OF THE STIPULATION

NOW, THEREFORE, it is hereby stipulated and agreed, by and among the undersigned parties, that the MDL Action shall be settled, subject to the approval of the Court, pursuant to Fed. R. Civ. P. 23(e), upon and subject to the following terms and conditions:

### A.   Definitions

1.    "Action(s)" or "MDL Action" means the four separate, putative nationwide class action cases underlying this multidistrict proceeding that were consolidated by the United States Judicial Panel on Multidistrict Litigation, under the caption *In Re Northstar Education Finance, Inc., Contract Litigation*, MDL 1990. The four actions are:

    (a)    *Guidos, et al. v. Northstar Education Finance, Inc.*, Case No. 0:08-cv-4837 (D. Minn.);

    (b)    *So v. Northstar Education Finance, Inc.*, Case No. 08-4580-R (C.D. Cal.);

    (c)    *Pintar v. Northstar Education Finance, Inc.*, Case No. 2:08-cv-13895 (E.D. Mich.); and

    (d)    *Staul v. Northstar Education Finance, Inc.*, Case No. 08-cv-06375 (D. Minn.).

2.    "Agreement" means this Settlement Agreement, together with the Exhibits attached hereto, which are incorporated herein by this reference (a/k/a the "Stipulation").

3.    "Attorneys' Fees" means the amount of money (as further described in Section I of this Stipulation and Settlement) that Northstar agrees to pay to Plaintiffs' counsel to compensate them for their work in this litigation. Attorneys' Fees expressly excludes Court-approved Litigation Expenses (as that term is defined herein).

4. "Bonus" means the reduction in qualified borrowers' interest expense on their loans, which was a feature of all the loans at issue in the Action and whose reinstatement, in part or in whole, is a Settlement Benefit as set forth in Sections D and E.

5. "Claims Administrator" means an independent professional service to be selected by Class Counsel and charged with, e.g., arranging for Court-ordered notices of this Settlement.

6. "Class" or "Class Members" means all persons and entities in the United States who obtained or co-signed a student loan held by Northstar or a wholly-owned subsidiary of Northstar at the time of the Suspension of the Bonus on February 18, 2008, provided that the loan (a) is eligible to receive Bonus payments; and (b) had not been fully paid off at the time of the Suspension. Excluded from the Class are the Court and its employees; Northstar; any parent, subsidiary, or affiliate of Northstar; and all employees and directors who are or have been employed by Northstar during the relevant time period.

7. Class Counsel" means Adam J. Levitt of Wolf Haldenstein Adler Freeman & Herz LLC; Robert K. Shelquist of Lockridge Grindal Nauen P.L.L.P.; and Charles S. Zimmerman of Zimmerman Reed, PLLP.

8. "Court" means the United States District Court for the District of Minnesota.

9. "Defendant" means Northstar Education Finance, Inc.

10. "Effective Date" means the date on which the Court's judgment approving this Stipulation becomes Final. As used in this Stipulation, "Final" means the date upon

which the judgment in the Action becomes not subject to further appeal or review. Thus, "Final" means, without limitation, the date of expiration of the time for the filing or noticing of any appeal from the final judgment of the Court without any appeal being filed therein; or, if an appeal is filed in the Action, the date upon which the judgment in the Action is finally affirmed on appeal, or the appeal is finally dismissed without any request for further discretionary review of such appellate decision; or, if further discretionary review of such appellate decision is sought, the date upon which such discretionary review is denied or, if granted, results in final affirmance of the judgment in the Action.

11.     "Fairness Hearing" means the hearing prescribed by Fed. R. Civ. P. 23(e)(2) (a/k/a the "Final Approval Hearing").

12.     "Fed. R. Civ. P." means the Federal Rules of Civil Procedure.

13.     "Fee and Expense Petition" means Settlement Class Counsel's application to the Court for an award of attorneys' fees, costs, and expenses, as set forth in Section I.

14.     "Final Judgment" means the Order to be entered in the Action approving this Agreement and the Settlement.

15.     "Litigation Expenses" includes any expenses incurred by Plaintiffs' counsel in connection with the prosecution and resolution of this Action, including all Court-approved litigation costs. Litigation Expenses does not include costs associated with the Notice and administration of the Settlement, which Northstar will pay.

16. "Notice" means the form of notice of the proposed Settlement to be provided to Class Members as provided in this Agreement and the Preliminary Approval Order, substantially in the form attached as Exhibit B hereto.

17. "Northstar" means Northstar Education Finance, Inc., a not-for-profit Delaware corporation, the defendant in this Action.

18. "Opt out" has the meaning provided in Paragraph K.2.

19. "Person" means any individual, corporation, partnership, association, joint stock company, trust, unincorporated organization, government and any political subdivision thereof, or any other type of entity.

20. "Plaintiffs" or "Named Plaintiffs" means John M. Guidos, John J. Guidos, Jennifer So, Jeffrey Pintar, and Chad Alan Staul.

21. "Plan of Distribution" means the method for distributing Settlement Benefits, as set forth in Section F of this Stipulation.

22. "Plan of Notice" means the method for disseminating notice of this settlement to putative Class Members, as set forth in Section I of this Stipulation.

23. "Preliminary Approval Order" means the order preliminarily approving the Settlement, authorizing dissemination of the Notice to the Class, substantially in the form attached as Exhibit A hereto.

24. "Releasees" means Northstar, and its past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, and representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), acting in such capacities, and

the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

25. "Releasor(s)" means Plaintiffs and all other Settlement Class Members and their respective past and present officers, directors, employees, agents, partners, representatives, spouses, heirs, executors, administrators, attorneys, and assigns.

26. "Sold Loans" means Class Members' loans sold by Northstar.

27. "Settled Claims" means any and all claims, actions, causes of action, rights or liabilities, whether arising out of state or federal law, including Unknown Claims, of any Settlement Class Member, which exist or may exist against Northstar, by reason of any matter, event, cause or thing whatsoever arising out of, relating to, or in any way connected with: (a) the Bonus, including without limitation the marketing and advertising of the Bonus, Settlement Class Members' decision to enter into a Northstar-originated student loan because of the Bonus, the economic benefit received by Settlement Class Members in connection with the Bonus, and the Suspension of the Bonus or (b) any facts, circumstances, transactions, events, occurrences, acts, omissions or failures to act related to the Bonus that are alleged in the Action. "Settled Claims," however, expressly excludes any claim relating to a Settlement Class Member's obligations arising under his or her student loan contract, which shall not be released pursuant to this Stipulation. "Settled Claims" also excludes any claims, obligations, or defenses any Named Plaintiff or Settlement Class Member may assert in any action brought by any entity that are not related to the Bonus.

28.    "Settlement" means the settlement of these Actions contemplated by this Agreement.

29.    "Settlement Benefit(s)" means the benefits that will be provided to Settlement Class Members under this Stipulation, as described in Sections D and E.

30.    "Settlement Bonus Trust Account" means the Settlement Benefit described in Section D.

31.    "Settlement Class" or "Settlement Class Members" means the members of the Class defined in Paragraph A.6 (above) who do not timely opt out of the Class in accordance with the requirements set forth in the Notice or as otherwise approved by the Court.

32.    "Settlement Hearing" means the hearing or hearings before the Court to determine whether the Final Judgment Order should be entered and to consider related matters, including the Fairness Hearing, defined above.

33.    "Settling Parties" means (a) the Settlement Class represented by the Named Plaintiffs and Settlement Class Counsel and (b) Northstar.

34.    "Suspension" means the suspension of the Bonus by Northstar on February 18, 2008.

33.    "Unknown Claims" means any and all Settled Claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his or her favor at the time of the release.  "Unknown Claims" also includes any and all Settled Claims that the Releasee does not know or suspect to exist in his, her, or its favor, that, if known by any Plaintiff, Settlement Class Member, or Releasee might have affected his, her or its

decision(s) with respect to the Settlement. With respect to any and all Settled Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs and Defendant shall expressly waive, and each Settlement Class Member and Releasee shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendant acknowledge, and all Settlement Class Members and Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendant Claims was separately bargained for and was a key element of the Settlement. "Unknown Claims," however, expressly excludes any claim relating to a Settlement Class Member's obligations arising under his or her student loan contract, which shall not be released pursuant to this Stipulation and further excludes any claims, obligations, or defenses asserted by Named Plaintiffs and Class Members that are not related to the Bonus.

**B.** **Approval of This Settlement**

1.     As soon as practicable after this Stipulation is fully executed, counsel for the undersigned parties shall apply to the Court, either jointly or separately, for the entry

of an Order that is in substance materially the same as the Preliminary Approval Order attached hereto as Exhibit A, which shall specifically include provisions which:

      a.      Preliminarily approve the Settlement as embodied in this Stipulation as being fair, reasonable, and adequate to the Class;

      b.      For purposes of settlement only, preliminarily certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and provide that the interests of Settlement Class Members in enforcing their rights in the Action will be fairly and adequately represented by the Named Plaintiffs and by Class Counsel;

      c.      Appoint Class Counsel as counsel for the Settlement Class;

      d.      Designate Plaintiffs as Settlement Class representatives;

      e.      Provide that Class Counsel are authorized to enter into the Stipulation and on behalf of the Settlement Class, and to bind Settlement Class Members to the duties and obligations contained herein, subject to final approval by the Court following the Settlement Hearing;

      f.      Approve the Notice that is in substance materially the same as Exhibit B attached hereto, the cost of which – along with all costs of Settlement administration – shall be borne by Northstar, for transmission to Settlement Class Members in order to provide notice of the Fairness Hearing for approval of the Settlement;

      g.      Direct that such Notice be mailed to all Class Members (including Class Members with Sold Loans) via First Class United States Mail and/or sent via electronic mail ("email") to Class Members, as set forth in Section I, within

twenty-five (25) days of entry of the Preliminary Approval Order at Defendant's expense;

h.      Direct that, pursuant to the terms of the Preliminary Approval Order, Class Counsel, through the Claims Administrator, shall establish and maintain a website under the Uniform Resource Locator (URL) www.northstarloansettlement.com, at which the Notice shall be posted to provide notice to the Class of the proposed Settlement. This shall constitute Internet Publication Notice.

i.      Find that U.S. Mail, email, and Internet Publication Notice constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in said Notices to all persons entitled to receive notice, and fully satisfy the requirements of Due Process and of Fed. R. Civ. P. 23;

j.      Require any Settlement Class Member who desires to request exclusion from the Settlement Class to so notify the Claims Administrator in the manner set forth in the Notice, and to provide the information required therein;

k.      Schedule a Fairness Hearing to be held by the Court on a date seventy-five (75) days following the entry of the Preliminary Approval Order in order to determine: (i) whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; (ii) whether a Final Judgment should be entered; (iii) whether the Plan of Distribution should be approved as fair and reasonable to the Class; and (iv) whether to approve the Fee and Expense Petition;

l.      Provide that any objections to the Settlement, the Plan of Distribution, or the Fee and Expense Petition shall be heard, and any papers submitted in support of said objections shall be received and considered by the Court at the Fairness Hearing (unless, the Court, in its discretion, directs otherwise), only if, on or before a date to be specified in the Notice, persons making objections give notice of their intention to appear, and submit copies of such papers as they propose to submit, to Class Counsel and Northstar's counsel in the manner described in the Notice;

m.      Provide that all Settlement Class Members' claims shall be stayed pending entry of a final judgment and upon entry of final judgment that all Settlement Class Members shall be permanently enjoined and barred from asserting any claims against Northstar arising from the Settled Claims, and that all Settlement Class Members conclusively shall be deemed to have released any and all such Settled Claims, except for proceedings to enforce this Stipulation – in the event the Settlement is not approved by the Court or is rejected by Northstar (or any appellate level court), the stay contemplated by this paragraph shall be lifted;

n.      Provide that the Fairness Hearing may, from time to time and without further notice to Class Members, be continued or adjourned by Court Order.

2.      Plaintiffs and Defendant shall act in good faith to effectuate this Agreement and shall cooperate to promptly seek and obtain the Court's preliminary and final approval of this Agreement (including providing class notice under Fed. R. Civ. P. 23(c)

and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Actions.

3.     The Parties intend to and shall be bound by this Agreement upon its execution, and this Agreement shall not be rescinded except in accordance with Paragraph K.3.

**C.     <u>Judgment To Be Entered by the Court Approving the Settlement</u>**

1.     Following notice to the Settlement Class, and pursuant to Fed. R. Civ. P. 23(e), the Parties will jointly submit to the Court the proposed Final Judgment.

2.     This Agreement shall become final, and the Effective Date shall occur, upon:

a.     Approval by the Court of the Settlement, following Notice to the Settlement Class and the Fairness Hearing; and

b.     Unless otherwise waived, entry by the Court of a Final Judgment and the expiration of any time for direct appeal of such Final Judgment, or, if any appeal is filed and not dismissed, after such Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari.

3.     Upon approval by the Court of the Settlement, a final judgment shall be entered by the Court, pursuant to a Final Judgment Order, which shall specifically include provisions which:

a.     Approve the Settlement set forth in this Stipulation as fair, reasonable, adequate, and in the best interests of the Settlement Class, and direct

consummation of the Settlement in accordance with the terms and provisions of this Stipulation;

b. Fully and finally dismiss the Action with prejudice, and without costs (except as may be provided herein) to any undersigned party as against any other;

c. Adjudge that the Named Plaintiffs and all Settlement Class Members shall conclusively be deemed to have released all Settled Claims against Northstar and its respective past and present parent, subsidiary, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and all of their respective past and present officers, directors, employees, agents, partners, representatives, spouses, heirs, executors, administrators, attorneys, and assigns;

d. Bar and permanently enjoin the Named Plaintiffs and Settlement Class Members from instituting, asserting, or prosecuting, either directly, representatively, or in any other capacity, any and all Settled Claims which they, or any of them, had or have against Northstar and its past and present parent, subsidiary, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and all of their respective past and present officers, directors, employees, agents, partners, representatives, spouses, heirs, executors, administrators, attorneys, and assigns;

e. Adjudge that Northstar shall conclusively be deemed to have released all Settled Claims against the Named Plaintiffs and Settlement Class

Members, and all of their, representatives, spouses, heirs, executors, administrators, insurers, attorneys, and assigns;

   f. Bar and permanently enjoin Northstar from instituting, asserting, or prosecuting, either directly, representatively, or in any other capacity, any and all Settled Claims against the Named Plaintiffs and Settlement Class Members, and all of their, representatives, spouses, heirs, executors, administrators, insurers, attorneys, and assigns; and

   g. Reserve jurisdiction over: (i) implementation of this settlement and any distribution to Settlement Class Members, pursuant to further orders of the Court; and (ii) the MDL Action, until the Effective Date, and until each and every act agreed to be performed by the undersigned parties shall have been performed pursuant to this Stipulation; and (iii) all undersigned parties, for the purpose of enforcing and administering this Stipulation.

**D.** **Settlement Benefits: Settlement Bonus Trust Account**

1. The core settlement benefit is the reinstatement of the Bonus (according to certain terms and conditions, as set forth below) as a guaranteed benefit. This Settlement mandates that the Bonus be paid over the life of Settlement Class Members' loans, except for in certain circumstances set forth below.

2. Just as before the Suspension, Settlement Class Members shall receive the Bonus (according to certain terms and conditions, as explained below) during such time as (a) their loan is in repayment and is owned by or on behalf of Northstar and (b) their student loan account is 59 days or less delinquent. Also, as before the Suspension, if a

- 16 -

Settlement Class Member's student loan account becomes 60 or more days delinquent and he or she is therefore not entitled to receive Settlement Benefits, that Settlement Class Member will once again be entitled to start receiving Settlement Benefits when his or her loan becomes 59 days or less delinquent. For purposes of this Stipulation, a loan is owned by or on behalf of Northstar if beneficial ownership of such loan is held by Northstar, any wholly-owned subsidiary of Northstar, or any trust the beneficial ownership of which is owned by Northstar or a wholly-owned subsidiary of Northstar.

3. The funding source for paying the Bonus will be the same as before the Suspension: excess cash released from Northstar's (a) three warehouse lending facilities, pursuant to the terms and conditions of trust indenture agreements Northstar entered into with the lenders and (b) secured bond financings, pursuant to the terms and conditions of the two governing bond indenture agreements. These lending facilities and bond indenture agreements contain terms and conditions—including terms and conditions governing how and when funds will be released to Northstar and in turn available to pay the Bonus—that are still binding on Northstar and will continue to be binding unless refinanced and/or Northstar is able to issue new bonds collateralized by the student loans entered into by Settlement Class Members. The funding source shall also include refinancings of these above-referenced warehouse lending facilities and secured bond financings.

4. In conjunction with its Settlement obligations, Northstar will create a Settlement Bonus Trust Account, into which (subject to Paragraph D.6) ninety percent (90%) of the cash released from the indenture agreements described above will be

deposited (pursuant to the terms of those indenture agreements). Subject to the Attorney Fee Distribution Plan set forth in Paragraph I of this Agreement, once the cash is deposited into the Settlement Bonus Trust Account, 100% of such amounts will be used to provide Settlement Benefits to Settlement Class Members according to the Plan of Distribution.

5.     The Settling Parties cannot guarantee any particular level of funding, however, which is dependent on myriad financial, business, and legislative contingencies beyond Northstar's control. Indeed, if financial conditions do not improve, or improve only modestly, then the funding of the Settlement Bonus Trust Account will not be sufficient to pay the Bonus to Settlement Class Members at pre-Suspension levels. In that case, as set forth below in the Plan of Distribution, the Bonus will be paid to Settlement Class Members on a *pro rata* basis according to the same formula Northstar used before the Suspension. However, if financial conditions improve to the extent that excess cash released from the indentures exceeds pre-Suspension levels, (subject to Paragraph D.6) ninety percent (90%) of such excess cash will be deposited into the Settlement Bonus Trust Account and distributed to Settlement Class Members in the manner set forth in this Stipulation. In that event, the Bonus will also be paid to Settlement Class Members on a *pro rata* basis from the excess funds according to the same formula Northstar used before the Suspension.

6.     Northstar asserts and discovery confirms that cash is not likely to be released from all of the indentures until the year 2013. Northstar has pledged certain amounts of cash which may be released from the secured bond financings referred to in

Paragraph D.3 to its warehouse lenders in order to avoid foreclosure of those loans, and may pledge additional amounts not currently pledged in the future. Northstar has therefore agreed to make certain (a) upfront cash payments and (b) guaranteed minimum distributions, as set forth in Paragraph E.2, which are structured as loans, both of which funding sources will allow for immediate funding of the Settlement Bonus Trust Account (after the Effective Date). The details of the upfront payment and minimum distributions are set forth below in Section E.

7. With respect to future pledges of amounts not currently pledged referenced in the previous Paragraph, Northstar shall only have the right to make such future pledges relating to Settlement Class Members' loans upon receipt of a written communication from a warehouse lender(s) that such pledge(s) is necessary to avoid foreclosure of one or more warehouse loans. In that event, Northstar shall be entitled to make such pledges commensurate with the need to avoid foreclosure. Northstar shall provide notice of such future pledges to Class Counsel within sixty (60) days following Northstar's making of the pledge.

8. These Settlement Benefits shall not be created or disbursed until the Effective Date. Specifically, no Settlement Bonus Trust Account will be created, and no funds will be released from that Settlement Bonus Trust Account, until the Effective Date. Northstar, however, will take interim steps (at its own expense) before the Effective Date such that it will be ready to (a) establish the Settlement Bonus Trust Account within thirty (30) days after the Effective Date and (b) make the first distribution to Settlement Class Members within sixty (60) days after the Effective Date.

9.     The Settlement Bonus Trust Account will be maintained at U.S. Bank, N.A. or a national banking association or trust company duly organized under the laws of the United States of America or any state or territory thereof having a combined capital stock or surplus of at least $50,000,000.00 (Fifty Million Dollars). Northstar will pay any Trust-related fees needed or related to creating and maintaining the Trust over time (separate and apart from, *i.e.*, without diminishing, the amounts in the Settlement Bonus Trust Account). Distributions from the Settlement Bonus Trust Account will be made to Settlement Class Members according to the terms and condition set forth in the Plan of Distribution. Northstar will provide Class Counsel quarterly reports of the Settlement Bonus Trust Account's cash receipts and distributions to Settlement Class Members.

10.     In the event of bankruptcy or dissolution of Northstar, the proceeds deposited into the Settlement Bonus Trust Account shall be deemed to be an asset to all Settlement Class Members who are eligible to receive the Bonus. Upon depositing the funds into the Settlement Bonus Trust Account, Northstar shall relinquish any and all claims of right to any portion of the proceeds, cash or funds that remain in the Settlement Bonus Trust Account.

11.     In the event Northstar files a Petition for Bankruptcy in the United States Bankruptcy Court, Northstar shall not oppose any action by the Settlement Class to lift the protections afforded Northstar under the Automatic Stay 11 U.S.C. § 352 as it relates to funding of the Bonus. Additionally, Northstar shall take the position in any contested petition or adversary proceeding that the payments set forth herein are regular payments not subject to any rule related to preferential payments under the Bankruptcy Code.

12.     This Settlement Bonus Trust Account, and the funding sources of the Trust described in this Section and in Section E, are the only means through which Northstar is obligated to pay any Settlement Benefits or Bonus.

**E.      Settlement Benefits:  Additional Upfront Cash Payment
        and Five-Year Minimum Distribution**

1.      Within thirty (30) days after the Effective Date, Northstar will pay $3,500,000.00 (Three Million and Five Hundred Thousand Dollars) to the Settlement Bonus Trust Account (the "Initial Payment") subject to the terms and conditions set forth in Paragraph J of this Agreement.

2.      In addition, Northstar will be obligated to guarantee a minimum distribution to the Settlement Bonus Trust Account of $1,250,000.00 (One Million and Two Hundred Fifty Thousand Dollars) each year for five (5) years after the Effective Date.  Subject to the Plan of Distribution set forth in paragraph F of this Agreement, the annual minimum guaranteed distribution means that if the trust indentures do not release a minimum of $1,250,000.00 to be distributed to the Settlement Bonus Trust Account for each of the five (5) years after the Effective Date, Northstar shall contribute an amount necessary to guarantee the $1,250,000.00 yearly contribution.

3.      Any amounts Northstar contributes pursuant to the minimum guaranteed distribution described in the previous Paragraph, however, shall be a loan that Northstar will be allowed to repay from the cash released from the indentures, under the following conditions:  (a) Northstar will only be able to repay this loan during a year in which at least $1,250,000.00 (One Million and Two Hundred Fifty Thousand Dollars) has been

distributed to the Settlement Bonus Trust Account, (b) Northstar can only use funds in excess of $1,250,000.00 (One Million and Two Hundred Fifty Thousand Dollars) to repay the loan, and (c) Northstar can only use fifty percent (50%) of such excess funds to repay the loan. By way of example, if in a given year $2,250,000.00 (Two Million and Two Hundred Fifty Thousand Dollars) has been distributed to the Settlement Bonus Trust Account, then $1,000,000.00 (One Million Dollars) would be available for repayment – of which $500,000 (Five Hundred Thousand) could be used to repay the loan. Northstar's right to repay such loan shall be extinguished ten (10) years from the Effective Date, regardless of whether Northstar has been able to repay the loan in full.

4.      These upfront cash payments are separate and independent of any amounts released from the trust indentures used to fund the Settlement Bonus Trust Account. Thus, the upfront cash payments do not diminish or reduce the amount of cash used to fund the Settlement Bonus Trust Account that is released from the indentures.

**F.      Plan of Distribution**

1.      Before the Suspension, the Bonus operated to reduce qualified borrowers' interest payments. Thus, Northstar did not write checks to borrowers in the amount of the applicable Bonus but, rather, credited borrowers' student loan accounts in the amount of the applicable Bonus. Under this Settlement, however, the applicable Bonus amounts will be transferred to Settlement Class Members' student loan accounts. For loans that Northstar owns, such transfer will be made by wire transfer to the loan servicer for application to the loan amount due. Northstar will be obligated to make these transfers

(whether wire transfer or check) over the life of each Settlement Class Members' loan(s) at its own expense.

2.     The amount of the Bonus applicable to Settlement Class Members will be calculated according to the same formula used to fund the Bonus before the Suspension (and based on the same qualifications set forth in Paragraph D.2). As set forth in Paragraph D.5, for any year in which the amounts available in the Settlement Bonus Trust Account are less than, or greater than, necessary to pay the Bonus amount at the same level as before the Suspension, Northstar will distribute the net available funds *pro rata* to Settlement Class Members.

3.     Distributions from the Settlement Bonus Trust Account to Settlement Class Members shall be made no less frequently than four (4) times per year.

4.     The entirety of the Initial Payment (see paragraph E.1), less any reductions mandated by Court Order, shall be distributed to (i) Settlement Class Members who were in the repayment phase at the time of the Suspension or before the Effective Date and also to (ii) Settlement Class Members whose loans have been sold (see Section G). Such distribution shall be as follows:

> a.     Northstar shall calculate the amount each Class Member would have received had the Bonus not been suspended from the date of Suspension through the Effective Date. For each Class Member, this amount is referred to herein as the "Suspended Bonus Amount."
>
> b.     An initial *pro rata* calculation shall be made for each Class Member whose loans were sold before this Stipulation was executed (as described in Paragraph F.5 below) by multiplying such Class Member's Suspended Bonus Amount by a fraction, the numerator of which is 3,500,000 and the denominator of which is the total Suspended Bonus Amount of all Class Members. The result is

referred to herein as the "Sold Loan *Pro Rata* Share." The Sold Loan *Pro Rata* Share shall be multiplied by 2.0 and the result distributed to such Class Members. The amount distributed is referred to herein as the "Sold Loan Distribution." Such Class Members will not receive any further distribution from the Initial Payment.

c.     The Sold Loan Distribution shall be deducted from the Initial Payment with the result being referred to herein as the Modified Initial Payment.

d.     A *pro rata* calculation shall be made for all remaining Class Members by multiplying each Class Member's Suspended Bonus Amount by a fraction, the numerator is the Modified Initial Payment and the denominator is the total Suspended Bonus Amounts for all such Class Members. This amount shall be distributed to such Class Members.

5.     Settlement Class Members whose loans were sold before this Stipulation was executed shall obtain a distribution from the Settlement Bonus Trust Account as set forth in Paragraph F.4 above. For such loans, the calculation date for the Bonus amount shall be the date on which the loan was sold, assigned, or otherwise transferred.

6.     Settlement Class Members whose loans are paid off or consolidated with another lender before the first distribution of Bonus payments following the Effective Date shall obtain a distribution from the Settlement Bonus Trust Account as set forth in Paragraph F.4 above. For such loans, the calculation date for the Bonus amount shall be the date on which the loan was paid off or consolidated.

7.     Settlement Class Members whose loans may be sold in the future as permitted by Section G shall remain entitled to receive distributions from the Settlement Bonus Trust according to the formula used before the Suspension and based on a *pro rata*

distribution (as set forth in Paragraph D.5) for three (3) full years following the date of the loan sale.

### G. Sale and/or Refinancing of Settlement Class Members' Loans

1. On December 16, 2008, Northstar sold certain loans with the Bonus to a third party. Settlement Class Members whose loans were sold as part of this transaction will receive a Bonus distribution from the Settlement Bonus Trust Account as set forth in Section F.

2. Northstar shall forbear from selling any Settlement Class Members' loans as of the date this Stipulation is executed, unless Northstar is in receipt of a written communication from a warehouse lender(s) that such sale is necessary to avoid foreclosure of one or more warehouse loans. In that event, Northstar shall be entitled to sell a quantity and/or dollar value of loans commensurate with the need to avoid foreclosure. Northstar shall provide notice of such future loan sales to Class Counsel within sixty (60) days following the sale. Settlement Class Members' loans that may be sold in the future, consistent with this Paragraph, will receive a Bonus as set forth in Section F.

3. The previous Paragraph does not apply to loans sold in the future to wholly-owned subsidiaries of Northstar or to a trust where Northstar or a wholly-owned subsidiary of Northstar owns the beneficial interest in such trust. To the contrary, Northstar shall be entitled to sell Settlement Class Members' loans to wholly-owned subsidiaries or such trusts for any reason and without limitation. Any loans sold to wholly-owned subsidiaries shall be treated the same as Northstar-owned loans for all

purposes relevant to this Settlement, including without limitation for purposes of receiving Settlement Benefits.

4. Northstar may, at its own discretion, enter into refinancing or new financing agreements with its existing or new warehouse lenders.

5. When refinancing or amending financings secured by Settlement Class Members' student loans owned by Northstar, Northstar will not agree to terms and conditions that serve to decrease the amount of cash released (for purposes of funding the Settlement Bonus Trust Account) that is occurring in the current financings unless Northstar concludes that such terms and conditions are necessary to obtain such financing or amendment. Notwithstanding the foregoing, nothing in this Stipulation or the settlement will affect the validity, binding nature of, or enforceability of any agreement, term, or condition of any such refinancing or amendment.

### H. **Plan of Notice**

1. <u>Email Notice</u>. Northstar will send the Notice to all Class Members by electronic mail ("email") for whom email addresses are maintained within ten (10) days of entry of the Preliminary Approval Order, and then a second time fifteen (15) days thereafter.

2. <u>U.S. Mail Notice</u>. Northstar will mail the Notice to Class Members via First Class U.S. Mail at Northstar's own expense to (a) all Class Members for whom email Notice was unsuccessful (*i.e.*, the email was returned as "undelivered" or the equivalent) and (b) all Class Members whose email addresses Northstar does not possess. Northstar shall complete this mailing to such Class Members, including all those Class

Members with Sold Loans, within twenty-five (25) days of entry of the Preliminary Approval Order.

3.     For Settlement Class Members whose loans were sold before this Stipulation was executed, Northstar, in providing U.S. Mail notice, shall cross-check the last known address of such Settlement Class Members against a National Change of Address Directory and shall use the address listed in that Directory when mailing the Notice.

4.     <u>Internet Publication Notice</u>. The Claims Administrator, at the direction and with the assistance of Class Counsel, shall create and maintain a settlement-related Internet website on which will be posted the Notice, this Stipulation (once executed), and other settlement-related documents agreed upon by counsel for the Settling Parties. The settlement website will be operational before the Notice is mailed to Settlement Class Members.

5.     As reflected in Exhibit B, the Notice shall advise Settlement Class Members of their rights under the Settlement set forth in this Stipulation, including the right to request exclusion from the settlement and their right to comment on or object to the Stipulation. The process and timing for exercising these rights is explained in the Notice and is also set forth in the Preliminary Approval Order attached as Exhibit A hereto.

## I.     **The Fee and Expense Petition**

1.     <u>Attorneys' Fees and Litigation Expenses</u>:   Northstar shall pay Class Counsel $4,500,000.00 (Four Million and Five Hundred Thousand Dollars) to cover both

Attorneys' Fees and Litigation Expenses, according to the schedule set forth in Paragraph I.3 (*infra*). Separate and apart from this $4.5 million amount, Northstar shall pay all Notice and administration costs incurred or required in conjunction with any aspect of the Settlement. In the event Class Counsel do not receive the full $4.5 million amount, Northstar shall be obligated to make a one-time payment of $35,000.00 (Thirty Five Thousand Dollars) in Litigation Expenses.

2. Northstar shall pay Class Counsel's Litigation Expenses and the first $1,000,000.00 of the agreed-upon Attorneys' Fees within five (5) days after the Effective Date.

3. This Settlement will likely result in Bonus distributions to the Class for an extended period of time into the future. As a result, the Parties agree to a staggered Attorneys' Fee, paid over time, rather than a single, lump sum distribution. Accordingly, Northstar, upon Court approval, shall pay Attorneys' Fees to Class Counsel as follows:

a. As noted in Paragraph I.2, Northstar shall pay $1 million in Attorneys' Fees to Class Counsel within five (5) days after the Effective Date;

b. On each anniversary date of the Effective Date in each subsequent year from Years 2 through 5, Northstar shall pay Class Counsel a guaranteed additional amount of Attorneys' Fees totaling $250,000.00 (Two Hundred and Fifty Thousand Dollars) for a total minimum guaranteed payment of $1,000,000.00 (One Million Dollars) in those four years;

c. In addition to the initial $1 million guaranteed payment and the $250,000 guaranteed annual payment(s) in Years 2 through 5 (collectively the

"Guaranteed Fees"), Northstar agrees to pay Class Counsel an additional $2,500,000.00 (Two Million and Five Hundred Thousand Dollars) in Attorneys' Fees, which, when added to the above-referenced payments, would result in Northstar's payment of $4.5 million in aggregate Attorneys' Fees and Litigation Expenses to Class Counsel in this litigation. These additional $2.5 million in Attorneys' Fees, however, are not guaranteed (the "Non-Guaranteed Fees") but instead are paid as follows. As set forth in Section D above, this Settlement requires Northstar to distribute ninety percent (90%) of all cash released from the indenture agreements described into a Settlement Bonus Trust Account. As set forth in Section E above, Northstar is obligated to guarantee a minimum distribution to the Settlement Bonus Trust Account of $1,250,000.00 (One Million and Two Hundred Fifty Thousand Dollars) each year for five (5) years after the Effective Date. For the first five years after the Effective Date, fifteen percent (15%) of all funds distributed to the Settlement Bonus Trust Account above and beyond the $1,250,000.00 guaranteed minimum distribution amounts shall be paid to Class Counsel as Attorneys' Fees until the additional $2.5 million in Non-Guaranteed Fees is paid. If the $2.5 million amount of Non-Guaranteed Fees is not reached during this initial five-year period, fifteen percent (15%) of all funds distributed to the Settlement Bonus Trust Account starting from the sixth year and for the remainder of the life of Class Members' loans, shall be paid to Class

Counsel as Attorneys' Fees until the additional $2.5 million in Non-Guaranteed Fees is paid. Therefore, whether, or when, Class Counsel is paid all or part of the $2.5 million in Non-Guaranteed Fees is contingent on the amount and timing of cash released into the Settlement Bonus Trust Account.

4.     Class Counsel, in their sole discretion, shall allocate and disburse the Attorneys' Fees among Plaintiffs' counsel in a manner in which Class Counsel believe reflects the contributions, if any, of such counsel in the prosecution of and results obtained in the Action. Northstar shall have no responsibility for, and no liability whatsoever with respect to, the allocation of Attorneys' Fees among Plaintiffs' counsel, and/or any other Person who may assert some claim thereto, of any Attorneys' Fee and Expense Award that the Court may make in the Action, and Northstar takes – and shall take – no position with respect to such matters.

5.     By agreeing to this Stipulation and Settlement on behalf of their respective clients, Plaintiffs' Counsel expressly agree to waive and be forever barred from asserting any appeal related to the allocation of Attorneys' Fees set forth in Paragraph I.4.

6.     The Parties agree that in recognition of each of the Named Plaintiffs' efforts on behalf of the Settlement Class, they shall, subject to Court approval, each be paid an incentive award of $7,500.00 (Seven Thousand and Five Hundred Dollars) as appropriate compensation for their time and effort for serving as Named Plaintiffs in this litigation. Northstar has agreed to pay these awards to the Named Plaintiffs over and above the Settlement Benefits.

**J. Release**

1. As set forth in the Preliminary Approval Order and Final Judgment Order, upon the occurrence of the Effective Date, each Settlement Class Member shall be deemed to have and hereby does release and forever discharge Northstar, and its respective past and present officers, directors, employees, agents, partners, representatives, administrators, attorneys, and assigns, from any and all liability for any and all Settled Claims.

2. The Settlement Benefits set forth in this Stipulation shall be the exclusive remedy available to Settlement Class Members under this Settlement.

**K. Conditions of Settlement; Effect of Disapproval, Cancellation, and Termination**

1. This Stipulation shall be deemed terminated and cancelled, and shall have no further force and effect whatsoever, if:

   (a) There is no Effective Date;

   (b) The Court fails to enter the Final Judgment Order as provided in Section C, or if such a Final Judgment Order is entered, it later is reversed or materially modified, whether on appeal or otherwise (a reversal of any award of attorneys' fees, costs, and expenses pursuant to the Fee and Expense Petition shall not be deemed a reversal or modification of the material terms of this Stipulation).

2. As permitted by Fed. R. Civ. P. 23(c)(2)(B)(v) and (e), Class Members may exclude themselves ("opt out") of the Settlement, as provided in the Notice or as

otherwise approved by the Court. Within ten (10) business days after the Court-ordered deadline by which Class Members may opt out of the Settlement Class, Class Counsel and Northstar's counsel shall agree upon a list of all persons or entities who timely filed notices of exclusion (the "Opt-outs").

3.      If the number of Opt-outs meets or exceeds the numerical threshold agreed upon by the Parties, as set forth in a separate Agreement Regarding Settlement Opt-Outs (which agreement shall be kept confidential and disclosed only to the Parties, their counsel, and the Court), then Northstar, by its counsel, may rescind this Agreement by serving written notice of rescission on Class Counsel not less than five (5) business days prior to the Fairness Hearing.

4.      In the event that this Stipulation is voided, terminated or cancelled, or fails to become effective for any reason whatsoever, the undersigned parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation, its exhibits, and any related agreements or orders, had never been executed. In such event, the Parties jointly will seek vacation of any order entered or actions taken in connection with this Stipulation. In the event the Court vacates the Stipulation, Northstar shall not be entitled to any costs or fees that it incurred as a result of its efforts to secure the Stipulation and Settlement.

L.      **Right to Audit**

1.      Given the ongoing nature of the relationship between Northstar and the Settlement Class, Class Counsel shall have the right to audit Northstar's compliance with

the terms and conditions of this Settlement Agreement if they become aware of credible evidence of Northstar's noncompliance. In the event that Class Counsel establishes Northstar has not complied with the terms and conditions of this Settlement Agreement, Class Counsel shall be entitled to reasonable attorneys' fees and costs – to be paid by Northstar – for their work conducted in connection with requiring Northstar's compliance.

### M.    Miscellaneous Provisions

1.    All of the exhibits attached hereto are hereby incorporated by this reference as though fully set forth herein.

2.    This Stipulation may be amended or modified only by a written instrument signed by all of the parties to this Stipulation or their successors-in-interest, except to the extent that any modification would be inconsistent with any Court Order.

3.    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver, by that party or by any other party to this Stipulation, of any other prior or subsequent breach of this Stipulation.

4.    This Stipulation and its exhibits constitute the entire agreement among the parties hereto, and no representations, warranties, or inducements have been made to any party concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

5.    Class Counsel, on behalf of the Settlement Class, is authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms. Class Counsel also are authorized to enter into any

modifications or amendments to this Stipulation on behalf of the Settlement Class which Class Counsel deem appropriate, subject to Court approval.

6.    This Stipulation will be executed on behalf of the parties hereto by their respective counsel of record. All counsel executing this Stipulation represent and warrant that they are authorized and empowered to execute this Stipulation on behalf of their stated client(s), and that the signature of such counsel is intended to and does legally bind stated client(s) of such counsel.

7.    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties hereto shall exchange among themselves signed counterparts. Signatures may be originals, facsimile, or .pdf copies.

8.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties to this Stipulation.

9.    All terms of this Stipulation and the exhibits hereto shall be governed by and interpreted according to the laws of the State of Minnesota, except to the extent that federal law applies.

10.    The parties to this Stipulation and their counsel agree to use their best efforts, and to take all reasonable steps necessary, to obtain the entry of the Final Judgment Order and to effectuate the settlement set forth in this Stipulation.

11.    Northstar has denied and continues to deny each and all of the claims and contentions alleged in the MDL Action and any wrongdoing or legal liability arising out of any of the conduct alleged in the MDL Action. Neither this Stipulation, nor any

document referred to herein, nor any action taken to carry out this Stipulation, is, may be construed as, or may be used as an admission by or against Northstar of any fault, wrongdoing, or liability whatsoever. Similarly, by entering into this Stipulation, Named Plaintiffs do not acknowledge that any of Northstar's denials or affirmative defenses have any merit. Pursuant to Fed. R. Evid. 408, entering into or carrying out this Stipulation, the exhibits hereto, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession by any of the undersigned parties, and shall not be offered or received into evidence in any action or proceeding against any undersigned party or their attorneys in any court or other tribunal for any purpose whatsoever, other than to enforce the provisions of this Stipulation or the provisions of any related agreement or exhibit hereto.

**IN WITNESS WHEREOF**, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of the date stated above.

Dated: December 14, 2009

Dated: December 14, 2009

_[signature]_

Robert K. Shelquist (MN # 21310X)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

_[signature]_

Adam J. Levitt
John E. Tangren
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

Todd A. Noteboom (MN # 240047)
David A. Applebaum (MN # 350606)
Arthur G. Boylan (MN #338229)
**LEONARD, STREET AND DEINARD
    Professional Association**
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Tel:  (612) 335-1500
Fax: (612) 335-1967

**COUNSEL FOR DEFENDANT
NORTHSTAR EDUCATION
FINANCE, INC.**

Charles S. Zimmerman (MN #20054)
Timothy J. Becker (MN #256663)
**ZIMMERMAN REED, PLLP**
651 Nicollet Mall Suite 501
Minneapolis, Minnesota  55402
Tel:  (612) 341-0400
Fax:  (612) 341-0844

**CLASS COUNSEL**

Jason J. Thompson
**SOMMERS SCHWARTZ P.C.**

36

Dated: December 14, 2009

Dated: December 14, 2009

---

Robert K. Shelquist (MN # 21310X)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

Adam J. Levitt
John E. Tangren
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

Charles S. Zimmerman (MN #20054)
Timothy J. Becker (MN #256663)
**ZIMMERMAN REED, PLLP**
651 Nicollet Mall Suite 501
Minneapolis, Minnesota 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

**CLASS COUNSEL**

Todd A. Noteboom (MN # 240047)
David A. Applebaum (MN # 350606)
Arthur G. Boylan (MN #338229)
**LEONARD, STREET AND DEINARD**
  **Professional Association**
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Tel: (612) 335-1500
Fax: (612) 335-1967

**COUNSEL FOR DEFENDANT**
**NORTHSTAR EDUCATION**
**FINANCE, INC.**

Dated: December 14, 2009

Dated: December 14, 2009

_____

Robert K. Shelquist (MN # 21310X)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

Todd A. Noteboom (MN # 240047)
David A. Applebaum (MN # 350606)
Arthur G. Boylan (MN #338229)
**LEONARD, STREET AND DEINARD**
  **Professional Association**
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Tel: (612) 335-1500
Fax: (612) 335-1967

**COUNSEL FOR DEFENDANT**
**NORTHSTAR EDUCATION**
**FINANCE, INC.**

_____

Adam J. Levitt
John E. Tangren
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

_____

Charles S. Zimmerman (MN #20054)
Timothy J. Becker (MN #256663)
**ZIMMERMAN REED, PLLP**
651 Nicollet Mall Suite 501
Minneapolis, Minnesota 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

**CLASS COUNSEL**

Jason J. Thompson
**SOMMERS SCHWARTZ P.C.**

2000 Town Center, Suite 900
Southfield, Michigan 48075
Tel: (248) 355-0300
Fax: (248) 746-4001

Brian S. Kabateck
Richard L. Kellner
Niall G. Yamane
**KABATECK BROWN
KELLNER LLP**
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

**PLAINTIFFS' EXECUTIVE
COMMITTEE**

## Index Of Exhibits

Exhibit A:   Preliminary Approval Order

Exhibit B:   Class Notice

# EXHIBIT C



February 1, 2020

This notice is being sent to Northstar Education Finance ("NEF") Total Higher Education ("T.H.E.") Loan Program borrowers to alert borrowers to an anticipated change in NEF's T.H.E. Repayment Bonus (the "Bonus").

As part of its charitable mission to reduce the cost of higher education, NEF has been able to share distributions of excess cash from its financing trusts with its borrowers through the Bonus.  In particular, borrowers who obtained or co-signed a student loan under NEF's T.H.E. Loan Program have periodically received a gratuitous reduction in their interest expense in the form of the Bonus if certain criteria have been met by the borrower (see eligibility criteria on Northstar's T.H.E. Loan Program website (www.theloanprogram.org).

NEF's ability to provide the Bonus depends on the existence of excess cash being released from its financing trusts, which is only permitted once terms and conditions are met pursuant to specific indenture agreements associated with the respective financings. The cash flows from the trusts are the only means through which NEF is able to pay the Bonus.  Because the cash flows from the financing trusts are dependent on economic and legislative conditions and contingencies, NEF has never, nor will it ever guarantee any specific level of funding for its Bonus payments.

NEF has recently experienced a decline in the level of excess cash releases from these financing trusts due to changes in economic conditions (including, but not limited to, changes in interest rates).  As a result, the funding source for paying the Bonus is anticipated to continue to decline, resulting in an inability to pay the Bonus in the very near future.  Because NEF's financing trusts are the sole source for the funding of the Bonus, this means it is likely the Bonus will not continue to be paid in the near future.

If the Bonus is discontinued, the terms of borrowers' loans remain unchanged; it simply means this gratuitous reduction in eligible borrowers' interest expense will no longer be available.

For a full description of the Bonus, please refer to www.theloanprogram.org (section titled: T.H.E. Repayment Bonus Benefit Plan).

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

DEMIAN OKSENENDLER, individually
and on behalf of all others similarly
situated,

             Plaintiff,

v.

NORTHSTAR EDUCATION FINANCE,
INC. d/b/a TOTAL HIGHER
EDUCATION,

             Defendant.

**CLASS ACTION**

**DECLARATION OF JENNIE
LEE ANDERSON PURSUANT
TO CAL. CIVIL CODE §1780(d)**

I, Jennie Lee Anderson, declare as follows:

1.    I am an attorney duly authorized to practice law in the State of California. I represent Demian Oksenendler, the named plaintiff in this litigation.

2.    I have personal knowledge of the matters set forth herein except as to those matters stated herein that are based on information and belief.  If called as a witness I could and would testify competently to these matters herein.

4.    On information and belief, and based on our investigation, Northstar Education Finance, Inc. resides in, has its principal place of business and is doing business in the Dakota County, which is located in the District of Minnesota.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true ad correct and executed this 25th day of 2020 in San Francisco, California.

_____
Jennie Lee Anderson

# EXHIBIT E

# ANDRUS ✣ ANDERSON LLP

March 26, 2020

*By Certified Mail, Return Receipt Requested*

Taige Thornton
President and CEO
Northstar Education Finance, Inc.
930 Blue Gentian Road, Suite 100
Eagan, MN 55121

**RE:    Notice of Violations of Consumer Legal Remedies Act and Demand**

Dear Mr. Thornton,

Pursuant to California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and specifically § 1782(a)(1)(2), Demian Oksenendler ("Plaintiff") on behalf of himself and all others similarly situated (the "Class"), and through the undersigned counsel, hereby notify you that Northstar Education Finance, Inc. ("Northstar"), has violated California Civil Code § 1770 by misrepresenting and concealing the true nature of its student loans and the T.H.E. Repayment Bonus Program.  (the "T.H.E. Program").

At all times relevant, Northstar marketed and sold its loans featuring the T.H.E. Program to Plaintiff and Class members, promoting the program as a bonus program that would apply for the life of the loan and effectively reduce the cost of their loans knowing, and without disclosing, its intention to unilaterally suspend the T.H.E. Program benefits in breach of the loan agreements.  Northstar misrepresented the benefits of the T.H.E. Program to induce Plaintiff and Class members to purchase Northstar loan programs instead of its competitors'.

On February 18, 2008, Northstar committed its first unilateral breach of its loan agreements with its borrowers by suspending the T.H.E. Program.  Northstar attributed this suspension to "the ongoing disruption in the global markets"—a condition or option neither contained in, disclosed, nor otherwise incorporated into Northstar's contracts with Plaintiff and the other Class members.  Class action litigation soon followed, which Northstar settled on a classwide basis with its borrowers on December 14, 2009, by entering into a Settlement Agreement that contractually obliged Northstar to honor the T.H.E. Program for the remaining life of the loans.

Nevertheless, in or about February or March 2020, Northstar again unilaterally suspended the T.H.E. Program, this time citing "changes in economic conditions." Northstar's renewed suspension of the T.H.E. Program causing damage to Plaintiff and

Thornton, Taige
March 26, 2020
Page **2** of **3**

the Class. Revoking the promised benefits effectively increased the interest rate that Plaintiff and Class members charged on the loans and, therefore, wrongfully increased the price of the loan.

Specifically, Plaintiff and other consumers allege that Northstar violated the following sections of California Civil Code § 1770:

1. California Civil Code § 1770(a)(2) by misrepresenting the source, sponsorship, approval or certification of the loans and the T.H.E. Program;

2. California Civil Code § 1750(a)(5) by representing that the loans and the T.H.E. Program had sponsorship, approval, characteristics, ingredients, benefits, or qualities which they did not possess;

3. California Civil Code § 1770(a)(7) by representing that of the loans and the T.H.E. Program were of a particular standard or quality when they were not;

4. California Civil Code § 1770(a)(9) by advertising the loans and the T.H.E. Program with the intent not to sell them as advertised;

5. California Civil Code § 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions applicable to the loans under the T.H.E. Program;

6. California Civil Code § 1770(a)(9)(14) by representing that the loan transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law;

7. California Civil Code § 1770(a)(16) by representing that the terms of the loans and the T.H.E. Program has been supplied in accordance with a previous representation when they had not; and/or

8. California Civil Code § 1770(a)(19) by inserting an unconscionable provision into the loan contracts.

This Notice is being served on behalf of Plaintiff and all similarly-situated consumers, who hereby demand that Northstar reinstate the T.H.E. Program's bonus benefits, apply benefits retroactively, reimburse Plaintiff and Class members for amounts unlawfully charged or lost, cease and desist from the unlawful conduct described herein, and pay Plaintiff's reasonable attorneys' fees and costs.

Thornton, Taige
March 26, 2020
Page **3** of **3**

We have sent this letter to you in order to fully comply with the requirements of California Civil Code § 1782.  We hope that you will act immediately to rectify this situation and stand ready to discuss a reasonable resolution of this matter on the terms outlined above or on similar terms acceptable to Plaintiff and similarly-situated consumers.

If you have any questions, require any additional information or would like to discuss these matters, please do not hesitate to contact me.

Very truly yours,

*/s/ Jennie Lee Anderson*

**CC via email only:**
Adam J. Levitt
Robert K. Shelquist